UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD PIERRE HUGHES,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>E. ARNOLD,<br><br>　　　　　Respondent. | No.  2:16-cv-0155 TLN CKD P<br><br><br>FINDINGS AND RECOMMENDATIONS |

　　　　Petitioner is a California prisoner proceeding pro se with a petition for writ of habeas corpus under 28 U.S.C. § 2254.  On December 15, 2011 in San Joaquin County, petitioner pled guilty to two counts of first degree burglary, charged as counts 2 and 3.  On March 9, 2012, petitioner was convicted by a jury of assault with intent to commit rape during the commission of a first degree burglary, charged as count 1.  On appeal, the burglary conviction charged as count 2 was dismissed as a lesser included offense of petitioner's conviction for assault with intent to commit rape during the commission of a first degree burglary.  Petitioner is serving a sentence of life imprisonment with the possibility of parole for the assault with intent to commit rape during the commission of a first degree burglary conviction and a consecutive four year sentence for the remaining first degree burglary conviction.  In his habeas petition, petitioner presents two grounds for relief.  ECF No. 1 at 4.

/////

I. <u>Background</u>

On direct appeal, the California Court of Appeal summarized the factual and procedural background with respect to petitioner's convictions as follows:

> At his arraignment on December 15, 2011, defendant indicated that he wanted to enter guilty pleas to both counts of first degree burglary (counts 2 & 3). The prosecutor cautioned that "[b]y . . . pleading guilty to Count 2, he's essentially admitting to the enhancement of the [section] 220, which is a lifetime – it's basically like – life – a life sentence. So by doing that, I just want to make sure that [defendant] understands that, that he's already – one of the enhancements for the life sentence is in play now, that if he gets convicted on that [section] 220, it's an automatic life sentence. I mean that is my plan to convict him on that, but I just want to make sure that he understands that what he's doing right now is essentially getting to the first step of that enhancement. It's very unusual for people to do this this soon." Defendant said he understood what the prosecutor had said and confirmed that he had discussed the matter with his trial counsel. After advising defendant of the consequences of his pleas, the trial court asked the prosecutor to set forth a factual basis for counts 2 and 3. The prosecutor recited the following factual basis for count 2: "On September 2nd, 2011, the defendant entered the home of the victims, which is located in Tracy, California. . . . When he entered the home, he had the intent to commit the [sections] 220 or 261(a)(2) [(forcible rape)]. [¶] Again, Judge, [defendant] shouldn't be pleading to this right now. When he entered the home, he attacked the victim in this matter, took off her underwear. She screamed. He attacked her. He struck her. She left the apartment." The trial court found there was a factual basis for counts 2 and 3, accepted defendant's guilty pleas as to those counts, and set count 1 for trial.
>
> Trial on count 1 commenced on February 14, 2012. The following evidence was adduced during the prosecution's case-in-chief. At approximately 5:00 a.m. on September 2, 2011, Jane Doe was asleep with her nine-month-old baby when she heard a sound coming from the bathroom of her one bedroom apartment. Believing her boyfriend and father of her baby had returned from out of town, she went to the bathroom and called out, "Can I help you?" She pulled on the door knob, but the person inside the bathroom pulled the door shut. At that point, her baby began to cry, and she turned to return to her bedroom. As she did so, the person inside the bathroom, later identified as defendant, came up behind her and pushed her face down on her bed. He then straddled her as she lay on her back and demanded money. Doe told him she did not have any money and attempted to grab her cell phone. Defendant told her he had a gun and threatened to kill her if she reached for something else. Doe kicked, screamed, and bit defendant, and defendant punched her in the head four times. Defendant continued to demand money, and Doe explained she was unemployed and did not have any money. Defendant remarked, "You got something in here," and when Doe assured him she did

not, defendant said, "Well, you're gonna give me something." He then motioned to unzip his pants, and Doe kicked him in the genitals. Defendant removed Doe's underwear, pulled her toward him by her legs, and slid his hand up her thigh toward her vagina. He did not touch her vagina because she fought him off. Defendant eventually stopped and ran out of the apartment. At one point, Doe asked defendant if he was "going to rape me in front of [my] baby?" Defendant said he did not want to hurt her baby. Defendant never said he was going to rape her.

When defendant left, Doe called 911, and police were dispatched to her apartment at approximately 5:30 a.m. When they arrived, Doe was hysterical and shaking. Doe's bed was unmade, and there was a pair of white underwear on the floor next to the bed. There were muddy footprints outside the bathroom window, inside the apartment leading from the bathroom to the bedroom, and leading from Doe's apartment to defendant's nearby apartment. Mud also was smeared on the bed sheets. Defendant's fingerprints were found on the exterior of the bathroom window and on the interior bathroom door handle. Doe had scratch marks on the left side of her face and neck and injuries to her upper and lower lips.

A few days prior to the attack, defendant asked Doe where her boyfriend was, and she told him that he was in Chicago. Defendant asked her when her boyfriend would return, and she said she did not know. Defendant told Doe that he had his eye on her for quite some time.

At the close of the prosecution's case-in-chief, the transcript of the prior proceeding during which defendant entered his guilty pleas to counts 2 and 3 was admitted into evidence, and a portion of that transcript, including the factual basis for count 2, was read to the jury.

Defendant testified in his defense at trial and confirmed much of Doe's testimony concerning his entry into the apartment, the subsequent struggle, including punching Doe in the head multiple times, and his demands for money. He denied that he intended to sexually assault her and said that he only was looking for money or something of value. He pushed Doe onto the bed because he thought she was "running for a weapon or a phone." He denied ever getting on top of Doe or being on the bed, and when asked about the mud on the bed sheets, he said he used his feet to block her kicks while she was on the bed. He admitted "Doe's underwear got pulled down," but denied that he did so intentionally, stating that his "hand may have pulled her underwear while [he was] trying to get away from her." As for Doe's claim that he slid his hand up her thigh toward her vagina, defendant said that his arm rubbed against her thigh as he was knocking her legs away. Defendant knew that Doe had a baby and her boyfriend was not around but denied telling her he was interested in her a few days before the incident. Rather, he asked her about her boyfriend and told her to have her boyfriend call him. Another man "initiated something with her and . . . was talking to her while she was walking away." When asked why he did not leave after Doe told him she had no

money, he said he tried to leave but "she was stead[ily] kicking and punching and grabbing me."  Defendant was in Doe's apartment for 10 to 15 minutes.

Answer, Ex. A at 3-5.

II.  Standard For Habeas Corpus Relief

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).[1]  Also, federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (referenced herein in as "§ 2254(d)."  It is the habeas petitioner's burden to show he is not precluded from obtaining relief by § 2254(d).  See Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1)  are different.  As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002).  A state court does not apply a rule different from the law set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply fails to cite or fails to indicate an awareness of federal law.  Early v. Packer, 537 U.S. 3, 8 (2002).

---

[1] The court does not have jurisdiction over any claim arising under state law.

4

The court will look to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). In this instance, both of petitioner's claims were raised on direct appeal and the California Court of Appeal was the last court to issue a reasoned decision.

It is appropriate to look to lower federal court decisions to determine what law has been "clearly established" by the Supreme Court and the reasonableness of a particular application of that law. "Clearly established" federal law is that determined by the Supreme Court. Arredondo v. Ortiz, 365 F.3d 778, 782-83 (9th Cir. 2004). At the same time, it is appropriate to look to lower federal court decisions as persuasive authority in determining what law has been "clearly established" and the reasonableness of a particular application of that law. Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir. 1999); Clark v. Murphy, 331 F.3d 1062 (9th Cir. 2003), overruled on other grounds, Lockyer v. Andrade, 538 U.S. 63 (2003); cf. Arredondo, 365 F.3d at 782-83 (noting that reliance on Ninth Circuit or other authority outside bounds of Supreme Court precedent is misplaced).

III. Analysis of Claims

A. "Effective" Guilty Plea

In his first claim, petitioner asserts that he "effectively" pled guilty to count one, assault with intent to commit rape during the commission of a first degree burglary, after pleading guilty to count 2, first degree burglary, and after evidence concerning that guilty plea was presented to jurors in petitioner's trial on count 1. That being the case, petitioner asserts his conviction on count 1 must be vacated because petitioner was not advised before "effectively" pleading guilty, pursuant to Boykin v. Alabama, 395 U.S. 238, 243 (1969), that by doing so he would be waiving his right to a jury trial, his right to confront witnesses and his right against self-incrimination. The California Court of Appeal rejected this claim finding that petitioner's plea of guilty regarding count 2 did not amount to an admission of guilt as to count 1. Answer, Ex. A at 12 n 2.

/////

The Court of Appeal's decision is not contrary to, nor does it involve an unreasonable application of Supreme Court authority. Furthermore, the decision is not based upon an unreasonable determination of the facts. For these reasons, petitioner is precluded from obtaining relief on his first claim by 28 U.S.C. § 2254(d). Additionally, this court concurs with the analysis of the Court of Appeal: the question of whether petitioner was guilty of count 1 was still up to the jury to decide. The evidence presented to the jury regarding petitioner's plea to count 2 was certainly damaging, but jurors were not compelled to find petitioner guilty based on that evidence. Therefore, the evidence itself cannot be held to be tantamount to a guilty plea.

### B. Ineffective Assistance of Counsel

In his second claim, petitioner asserts his trial counsel rendered ineffective assistance of counsel in violation of the Sixth Amendment by failing to object to the following instances of allegedly improper questioning by the prosecution:

1. The prosecutor asked petitioner whether he intended to rape Jane Doe when he broke into her apartment. When petitioner indicated that was not his intent, the following took place:

> Q: On December 15th, 2011, I read a factual basis of what happened that morning. You did not object to that question or to that statement of facts. Your attorney did not object to that statement of facts. The facts were read in. The judge read you every single right that you had: The right to remain silent, the right to have counsel, the right for a jury trial, all these different rights, Not once did you say on the record, hey, I was just burglarizing that place, I wasn't going to do anything else?
>
> A: Sir, we pled guilty to Count 2 and not Count 1.
>
> Q: My question to you - - I'll read the factual basis. I'll read it to you right now.
>
> On September 2nd, 2011, defendant entered the home of the victim, which was located in Tracy California - - I'm going to skip - - I'll give you the address right now, 231 Grant Line Road apartment 118, When he entered the home, he had intent to commit a 220 or 261(a)(2), that's rape. But wait. When he entered the home, he attacked the victim in the matter, took off her underwear, when she screamed he attacked her.

/////

/////

/////

6

        These are the facts that I read into the record. You didn't say it was an accident. You didn't say any - - your counsel didn't object. There was no mention of any objections to the factual statement.

        No further questions.

RT 339-40.

    2. The prosecution repeatedly asked petitioner whether he thought Jane Doe was lying when petitioner's testimony differed with hers.

    In order to prevail on a claim of ineffective assistance of counsel, petitioner must show that considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). To this end, petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. Id. at 690. The court must then determine, whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. Id. Second, a defendant must affirmatively prove prejudice. Id. at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. However, prejudice need not be shown if it is shown that trial counsel "entirely fail[ed] to subject the prosecution's case to meaningful adversarial testing." U.S. v. Cronic, 466 U.S. 648, 659 (1984).

    After identifying the correct legal standards from Strickland and Cronic, the California Court of Appeal addressed petitioner's ineffective assistance of counsel claims as follows:[2]

> [D]efense counsel argued defendant was not guilty of count 1 because he did *not* intend to rape Doe. During his opening statement, he told the jury that "[t]his case is about what [defendant's] intent was" and asserted that the evidence would *not* show that defendant intended to rape Doe. During his direct examination of defendant, he elicited testimony that defendant did not intend to remove Doe's underwear or sexually assault her in any way, chose Doe's apartment because the window was open, and entered the apartment intending to steal money or other valuables. During his closing argument, defense counsel argued defendant did

---

[2] The court notes that petitioner raised other claims of ineffective assistance of counsel before the Court of Appeal that he does not raise here. Specifically, petitioner argued counsel should have objected to the factual basis put forward by the prosecution in support of petitioner's plea of guilty to count 2 and counsel should have objected to the factual basis being entered into evidence at petitioner's trial on count 1.

>not intend to rape Doe, emphasizing defendant's repeated demands for money and his explanation that his hand got caught on Doe's underwear during the struggle. He also suggested that defendant's hands were at his waist because he was attempting to protect his genitals from Doe's kicks and not because he was attempting to unzip his pants.
>
>Because this is not a case where defense counsel entirely failed to subject the prosecution's case to meaningful adversarial testing, defendant's ineffective assistance of counsel claim must be analyzed under *Strickland*. (Citation omitted.). . .
>
>At trial, defendant admitted many of the factual allegations contained in the prosecutor's factual basis, including entering the apartment, pushing Doe onto the bed, striking Doe, and pulling down Doe's underwear. Moreover, there was strong evidence defendant intended to do more than just steal money or valuables— he knew Doe's boyfriend was gone when he entered her apartment, he had previously stated he had his eye on her, he entered the apartment at a time Doe would likely be home, he failed to leave after Doe told him she had no money, he did not take anything when he left, there was mud smeared on the bed sheets indicating defendant had been on the bed, and Doe's underwear was on the floor next to the bed when the police arrived. On this record, we find there is no reasonable probability that defendant would have obtained a more favorable result at trial had the jury not learned about the factual basis given by the prosecutor for count 2 and defendant's failure to object thereto.
>
>We reach the same conclusion with respect to defendant's assertion that his trial counsel was ineffective in failing to object when the prosecutor repeatedly asked defendant whether he believed Doe was a "liar" or was "lying" when she testified at trial. Those isolated admissions do not fall within the *Cronic* exception; thus they are subject to the *Strickland* analysis and for the reasons set forth above, we conclude there is no reasonable probability that but for counsel's failure to object to the prosecutor's challenged questioning of defendant, the result would have been more favorable to him.

Answer, Ex. A at 12-13.

After reviewing all relevant portions of the record before the court, the court finds that the California Court of Appeal's decision with respect to petitioner's ineffective assistance of counsel claim is not contrary to, nor does it involve an unreasonable application of Supreme Court authority. Furthermore, the decision is not based upon an unreasonable determination of the facts. For these reasons, petitioner is precluded from obtaining relief on his ineffective assistance of counsel claim by 28 U.S.C. § 2254(d).

/////

In accordance with the above, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus be denied; and
2. This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: October 27, 2016

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

1
hugh0155.157